## W. J. Byrnes & Co., of Los Angeles, Inc., Brokers for E. E. Winters Co. v. United States

**No. 7277.**—Invoice dated Quito, Ecuador, July 1943.
        Certified July 1943.
        Entered at Los Angeles, Calif., October 22, 1943.
        Entry No. 993.

(Decided June 12, 1947)

*Harper & Harper* (*George R. Tuttle* and *Charles J. Evans* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Harold L. Grossman* and *Daniel I. Auster*, special attorneys), for the defendant.

CLINE, Judge: This appeal to reappraisement is brought by the importer against the appraiser's action in advancing the values of leather cigarette cases and coin purses imported from Ecuador on September 17, 1943. The merchandise was bought from Sunitra of Quito on orders accepted in June and July of 1943 and exported August 19, 1943. It was invoiced, entered, and appraised as follows:

|  | Invoiced | Entered | Appraised |
|---|---|---|---|
| Consular invoice #106, dated Quito, July 1943: | | | |
| 300 doz. leather cigarette cases | $1.40 per doz. plus signs of origin and cost of chest | $1.40 per doz. plus signs of origin and cost of chest, plus 1½% tax | $1.60 per doz., packing included, less 2.35% nondutiable charges |
| Consular invoice #122, dated Quito, August 1943: | | | |
| 152 doz. leather cigarette cases | $1.35 per doz. plus chests and packing, signs of origin | $1.40 per doz. plus chests and packing, signs of origin, plus 1½% tax | $1.60 per doz., packing included, less 2.35% nondutiable charges |
| 61 doz. leather coin purses | $1.90 per doz plus chests and packing, signs of origin | $1.90 per doz. plus chests and packing, signs of origin, plus 1½% tax | $2.30 per doz., packing included, less 6.07% nondutiable charges plus 1½% |
| 59 doz. leather coin purses | $1.50 per doz. plus chests and packing, signs of origin | $1.50 per doz. plus chests and packing, signs of origin, plus 1½% tax | $1.70 per doz., packing included, less 6.07% nondutiable charges, plus 1½% |

The importer contends that the invoice prices represent the dutiable value, that is, export value, and that the foreign value is not higher. The appraised values also appear to be export values, although counsel for the Government at one time stated that the appraisement was on the basis of foreign value. However, a "Report of Appraising Officer" (defendant's exhibit 8), sent from Los Angeles to New York, contains the following statement:

   * * * Following this information this office considers the export value to be $1.40 dozen plus marking costs and packing for the cigarette cases.

The reply stated that such merchandise had been appraised at New York at $1.60 per dozen. At the trial, Samuel Levitt, an examiner at New York, testified that such cigarette cases entered at New York had been appraised at $1.60 per dozen on the basis of export value.

At the trial plaintiff called Marietta Korman, sister of the importer. She testified that she had assisted her brother in his business since he started in 1941 and had taken charge of it in May 1943 when he went into the service; that she did not recall whether the merchandise herein was ordered by herself or by her brother but that she was familiar with the type of articles imported; that they were inferior in every way to articles previously imported; that the tanning and workmanship were very poor; that the stitching was not straight; that she had to cut down on her prices in order to sell them. She also stated that she had complained to Sunitra, the shipper, and had been allowed a credit of $143 which she had not used because the only way to obtain it was to purchase additional merchandise. In order to obtain the market price of the merchandise at the time of exportation, she wrote to the American consul in Quito and received a reply with the following information:

I have your letter dated May 17, 1944, in which you requested this office to supply you with the current market prices for the goods covered by consular invoices Nos. 106 and 122 certified by this office in July and August of 1943.

In reply, I regret to inform you that the marketing of flat leather goods in Ecuador, such as covered by these consular invoices, is such that it is impossible to establish a current market price for a specific date. Almost all of the leather goods manufactured in Ecuador are the product of household industries in villages in the northern part of the country. The quality of the merchandise may vary from shop to shop and the prices in one town may be different from those of another. The same holds true for the sellers of leather goods in Quito. One firm may have a better quality and thus ask more than a firm with a poorer quality of goods. All such merchandise is handmade and naturally varies a great deal in quality. Shippers usually contract with numbers of small producers who may or may not require advances for materials and living expenses; prices will vary with the individual contracts.

Mrs. Korman stated that in the shipments prior to this one, the seams were straight, the material was not rough, the inside was nice and smooth, the tanning was even and the cigarette cases were regularly sized; that in the present shipment the cases were not cut evenly, some being larger and some smaller.

The Government called Clifton Clouse, the examiner at Los Angeles, who testified that he had examined the merchandise and had reported to the appraiser the several values stated above under "appraised." He stated that he had been informed by a letter received from the Customs Information Exchange that the firms of Sunitra, Ecuadorean Export Trading, Jose Scharfstein & Cia., A. Kastner, and Wronsky & Seligmann had combined at least as early as August 5, 1943, to form Compex, S. A. There were then introduced into evidence a coin

purse (defendant's exhibit 4) and two cigarette cases (defendant's collective exhibit 5) from the present shipment, and a coin purse (defendant's exhibit 6) from an importation (entry #1584) by the importer herein from Compex, S. A., purchased in August 1943 and exported September 17, 1943. Mr. Clouse testified that exhibits 4 and 6 were the same merchandise; that he saw no material difference in them.

It was then stipulated that during August 1943, the importer herein purchased from Compex, S. A., leather coin purses at a unit price of $1.70 and other leather coin purses at a unit price of $2.30.

Mr. Clouse then stated that the merchandise herein reported for appraisement at $1.70 per dozen was identical with that listed in entry #1584 at $1.70 per dozen and that the merchandise herein reported for appraisement at $2.30 per dozen was such or similar to that listed in entry #1584 at $2.30 per dozen.

Mr. Clouse also testified that the merchandise as a whole was uneven in color; that the stitching at times was poor; that the leather was uneven in thickness and would tear easily; that the cigarette cases were not all of one size; sometimes the King-size being almost as small as the so-called Chesterfield size, and sometimes the Chesterfield size was too large or too small to hold a standard package of cigarettes; that some of the coin purses were better and some worse than exhibit 4; that he judged the quality by the thickness of the leather, its pliability, scar marks, and uniformity as to color, and the manner of stitching. As to the coin purses in entry #1584, he stated that some were thinner than exhibit 6, some the same and some a little better; that no single purse would be representative of all the purses from any shipment; that he did not recognize a tremendous difference between exhibits 4 and 6, although exhibit 4 was poorer as to thickness of leather; and that he would appraise both articles at the same price. He also testified that he based his appraisement of the coin purses on the prices shown on entry #1584.

At a subsequent hearing in New York, defendant called Examiner Samuel Levitt, who testified that he had examined merchandise similar to exhibit 5 during 1943; that he personally examined the merchandise covered by consular invoice #132, certified in September 1943, at Guayaquil, Ecuador, and filed in connection with entry #711968 on October 20, 1943, in New York. A sample from that shipment was admitted into evidence as defendant's exhibit 7 and Mr. Levitt testified that it was made of cowhide leather of inferior grade the same as exhibit 5, and that the workmanship was about the same. He further stated that the merchandise in entry #711968 was sold by Compex, S. A.; that 600 dozen cigarette cases were invoiced at $1.60 per dozen and were appraised at the invoice values, less consular fee and 1 per centum export tax, and plus 1½ per centum

turnover tax; that said merchandise was shipped in pursuance of an order accepted in August 1943.

Francis A. Nugent, assistant appraiser at the port of New York, testified that he had received a C. I. E. report with respect to entry #993 (the entry herein) together with four samples; that he examined the cigarette cases charged to his division and compared them with similar merchandise which had come into New York; that he considered them the same type or "such" merchandise. A certified copy of the C. I. E. report was admitted into evidence as defendant's exhibit 8.

On cross-examination, Mr. Nugent stated that exhibits 5 and 7 were similar because they were made of the same material, cowhide; the character of the workmanship was the same; the leather had been treated by approximately the same processes; the cost of the materials was approximately the same; that he would not consider the thickness of the leather because in a shipment from the same party, there would be thick ones and thin ones; some would appear to be better finished than others; the fineness of the stitching in some instances would be greater than in others; that the differences in stitching, and in the thickness, flexibility, and smoothness of the leather were minor; that the articles would still be similar.

Milton M. Monderer, owner of the Excelsior Supply Co., testified that he had received a letter from Compex, S. A., dated August 5, 1943; that the paper marked "Exhibit 3" for identification was a copy of that letter; that the commercial invoice mentioned therein referred to a shipment made prior to August 5, 1943. The paper was then admitted into evidence as defendant's exhibit 3. The following statements from the letter are pertinent to the issues herein:

The "Sumitra" asked us to inform you, the following firms:

> "Sumitra"
> "Ecuadorean Export Trading"
> "Jose Scharfstein & Cia"
> "A. Kastner" and
> "Wronsky & Seligmann"

have founded the COMPEX S. A. This company, which resulted from the fusion of the 5 most important leather goods exporters of this country menas [sic], that from now on, practically the whole leather goods production of Ecuador will be exported by us. We will be now in a position to satisfy all wishes of our customers regarding quantity and quality of the desired goods. We also will be able to effectuate shipments very soon and we can offer the great advantage to our customers abroad to establish the prices for a longer time if not unforseen events oblige us to change them.

Our new prices are the following:

| | |
|---|---|
| Cigarette cases, size Chesterfield | $1.60 dz. |
| Cigarette cases, King size | 1.85 dz. |
| Wallets | 1.85 dz. |

Mr. Monderer also testified that he had purchased cigarette cases from Sunitra in 1943; that the sample shipment sent to him was like exhibit 5, but the merchandise he received was not so good; that 80 per centum was much worse in quality, but it was all invoiced at the same price; that he did not remember exactly when in 1943 he received any shipments; that he started buying the cigarette cases in 1942; that the first shipments were pretty good, but the last three were very bad; that they were full of dirty and discolored leather; that the same cigarette case would be in different colors; that the stitching was not as nice as that in exhibit 5; that there was a big difference in quality between exhibit 4 and exhibit 6 and that exhibit 6 was of better quality; that he thought the cigarette cases purchased prior to the date of the letter (exhibit 3) were cheaper than $1.60, probably $1.40.

In reappraisement cases under the Tariff Act of 1930, the appealing party must overcome the presumption of correctness attaching to the value found by the appraiser and must establish the foreign value and the export value so that the higher value may be taken as the dutiable value, or the foreign value and the nonexistence of an export value, or the export value and the nonexistence of a foreign value. *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C. C. P. A. 19, C. A. D. 118; *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276; *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. 251, T. D. 46057.

In the instant case plaintiff has offered no evidence to show whether or not a foreign value exists, but claims that the invoice prices represent the dutiable value, that is, the export value, and that the foreign value is no higher. It may be that the foreign and export values are the same but there is no evidence in the record as to sales in the home market.

Moreover, plaintiff has not proved a value, foreign or export, different from that found by the appraiser. Plaintiff's claim is apparently based on the theory that the imported merchandise was inferior in quality and that such inferiority was shown by the testimony of Mrs. Korman and the fact that Sunitra allowed her a credit of $143. Even assuming that such inferiority was established, there is nothing to show at what price such inferior merchandise was freely offered to all purchasers in the usual wholesale quantities in the ordinary course of trade. Mrs. Korman may have obtained the credit because of her superior bargaining ability; Mr. Monderer did not recollect getting any refund or credit, although he testified that his shipments were inferior to the sample of plaintiff's merchandise. The situation is, therefore, analogous to that in *United States* v. *Mexican Products Co.*, 28 C. C. P. A. 80, C. A. D. 129, where it was held that discounts depending upon the bargaining ability of the purchaser could not be considered in finding dutiable value, which must be based upon the price to all purchasers.

In *United States* v. *Marks & Rosenfeld, Inc.*, 1 Cust. Ct. 704, Reap. Dec. 4432, the question was raised as to whether or not certain glassware was inferior. It was conceded at the outset that if the merchandise were first grade, the values found by the appraiser were correct, and that if the merchandise were inferior, then the entered values were correct. Plaintiff then proved through the testimony of experts that the imported merchandise was inferior and that the manufacturer had recognized this by reducing the prices of the second shipment and offering the balance of the goods at a much lower price. In the instant case there was no concession that if the goods were inferior, then the entered values were correct and plaintiff's proof of inferiority is very meager. The mere fact that plaintiff received a credit establishes neither inferiority nor the dutiable value of the merchandise.

A reading of the whole record indicates that articles in each shipment of this type of merchandise varied in quality; that some pieces would be discolored and dirty and poorly made, but that some would be good. An examination of the samples submitted does not indicate any great variance. In order for plaintiff to show that his importations were of inferior grade, it would be necessary for him to show that the percentage of bad pieces in his shipment was much higher than that in the shipments used by the appraiser in finding value. There is no such evidence in the record.

Plaintiff's claim that the invoice values establish the dutiable values is untenable. In *Carey & Skinner, Inc.* v. *United States*, 16 Cust. Ct. 361, Reap. Dec. 6279, value was found upon the basis of the invoice prices since the appraisement had been held invalid or void and since there was no other proof tending to establish market value. In *Sears, Roebuck & Co.* v. *United States*, 31 C. C. P. A. 36, C. A. D. 246, appellants contended they had established that the appraised values were incorrect and that therefore the invoice prices should be accepted as the dutiable values. The court found appellants' evidence insufficient since neither the contracts nor the invoices nor the testimony indicated that similar merchandise was freely offered for sale to all purchasers in the principal market of Germany for export to the United States at the prices set forth in the invoices. Moreover, in *United States* v. *Samuel S. Perry*, 13 Cust. Ct. 364, Reap. Dec. 6045, the court said (p. 366):

> The mere submission of an invoice—the only evidence before me—does not establish a *prima facie* case. Standing alone as it does, the paper has little, if any, evidentiary value in this case. There is no supporting proof that the price stated thereon was the value of such or similar merchandise prevailing under market conditions contemplated by the statute. Corroborative evidence to that effect is vital to support plaintiff's claim.

It must be held, therefore, that plaintiff has failed to establish a *prima facie* case. On the other hand, there is evidence tending to

support the values found by the appraiser. There is evidence that the merchandise in entry #1584 was similar to that in the instant case; that it was purchased in August 1943, the month in which the instant merchandise was exported; and that the prices of the coin purses therein were $1.70 and $2.30 per unit. As to the cigarette cases, there is evidence that Sunitra, the shipper herein, combined with other firms to form Compex, S. A., some time prior to August 5, 1943, and that Compex, S. A., offered similar cigarette cases at $1.60 per dozen.

On the entire record, I hold that the presumption in favor of the values found by the appraiser has not been overcome. I therefore find the proper basis of valuation to be the export value and that such value is the appraised value of each item.

Judgment will be rendered accordingly.